**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| FRANCIS MUNAGI | ) | |
| | ) | No.    1:25-cv-13175 |
| Petitioner, | ) | |
| | ) | **PETITION FOR** |
| v. | ) | **WRIT OF** |
| | ) | **HABEAS CORPUS** |
| JOSEPH D. MCDONALD, Plymouth County Sheriff | ) | |
| TODD M. LYONS, Acting Director Immigration and | ) | |
| Customs Enforcement, Boston Field Office | ) | |
| PATRICIA HYDE, Field Office Director, | ) | |
| MICHAEL KROL, HSI New England Special | ) | |
| Agent in Charge, and TODD LYONS, Acting | ) | |
| Director U.S. Immigrations and Customs | ) | |
| Enforcement, KRISTI NOEM, U.S. Secretary | ) | |
| of Homeland Security, PAMELA BONDI, | ) | |
| U.S. Attorney General, DONALD J. TRUMP, President | ) | |
| of the U.S. | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

<u>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**</u>

**INTRODUCTION**

1.      Petitioner Francis Munagi ("Petitioner") is a Kenyan national with three children, one of whom is a three-year-old U.S. citizen with autism. On information and belief, he was unlawfully detained by federal immigration agents on October 14, 2025.

2.      Accordingly, to vindicate Petitioner's statutory, constitutional, and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus.

3.      Petitioner alleges violations of the protection against unreasonable search and seizure of the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act.

4.      Petitioner asks this Court to find that his arrest and detention are illegal and order his immediate release, a stay of removal from jurisdiction of the United States or transfer outside of the District of Massachusetts, and a reasonable award of attorney's fees.

**JURISDICTION**

5.      This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner is a noncitizen and whether Petitioner was ordered removed under 8 U.S.C. § 1225(b)(1).

7.      This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

8.      Venue is proper because Petitioner is detained at Plymouth County Correctional Facility in Plymouth, Massachusetts, which is within the jurisdiction of this District. Plymouth County Correctional Facility confirmed Petitioner was in their custody at 4:40 pm on October 22, 2025. The ICE detainee locator showed Petitioner at Plymouth County Correctional at 4:15pm on October 28, 2025.

9.      Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to his claims occurred in this District, and Petitioner resides in this District. There is no real property involved in this action.  28 U.S.C. § 1391(e).

**PARTIES**

10.      Petitioner is a resident of Lowell, Massachusetts. He is in the custody, and under the direct control, of Respondents and their agents.

11.      Respondent Joseph D. McDonald is named in his official capacity as sheriff of Plymouth County. In this capacity, he is responsible for the detention of noncitizens held at the Plymouth County Correctional Facility, and therefore, is a custodian of the Petitioner.

12.      Respondent Todd Lyons is named in his official capacity as the Acting Director for U.S. Immigration and Customs Enforcement. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States and is legally responsible for pursuing any effort to remove the Petitioner; and therefore, is a custodian of the Petitioner.

13. Respondent Patricia Hyde is sued in her official capacity as the Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is a legal custodian of Petitioner and has authority to release her.

14. Respondent Michael Krol is sued in his official capacity as the HSI New England Special Agent in Charge. In this capacity, Respondent Krol is a legal custodian of Petitioner and has the authority to release her.

15. Respondent Todd Lyons is sued in his official capacity as Acting Director of the United States Immigration and Customs Enforcement. In this capacity, Respondent Lyons oversees all detention of noncitizens held in ICE custody and is a legal custodian of petitioner with the authority to release her.

16. Respondent Kristi Noem is sued in her official capacity as Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Noem is a legal custodian of Petitioner.

17. Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

18. Respondent Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of State and Department of Homeland Security.

**STATEMENT OF FACTS**

19.     Petitioner is a fifty-five-year-old citizen of Kenya. Petitioner has resided in the United States for approximately twenty-four years with his wife, Joyce, and their three U.S. citizen children.

20.     In 2001, Petitioner entered the United States with a form I-94 after Border Protection agents inspected him.

21.     On or about March, 2014 the Department of Homeland Security held Petitioner in immigration detention.

22.     On or about April 28, 2014, an Immigration Judge ordered Mr. Munagi removed from the United States. Mr. Munagi was not represented by counsel during these proceedings.

23.     Upon information and belief, on or about October, 2014, the Department of Homeland Security released Petitioner under supervised release.

24.     Petitioner has been checking in regularly with the Department of Homeland Security Immigration and Customs Enforcement since his release in 2014.

25.     On or about June, 2025, Petitioner received a notice to perform an in-person check-in with Immigration and Customs Enforcement on October 14, 2025. At the check-in appointment, Immigration and Customs Enforcement detained the Petitioner. Respondents subsequently brought Petitioner to Burlington Field Office for processing. Respondents later moved Petitioner to Plymouth County Corrections where he remains.

**LEGAL FRAMEWORK**

26.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a

return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

27. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

28. Respondents purported basis for re-detaining Mr. Munagi is 8 U.S.C. §1231. ICE's authority to release people from detention is governed by 8 U.S.C. § 1231(a)(3), which grants ICE authority to release an individual "subject to supervision."

29. Federal regulations specify that ICE may only release such individuals if they "demonstrate[] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d). These requirements—flight risk and danger—reflect constitutional constraints, since only individuals who pose a flight risk or danger may be civilly detained. *See Zadvydas v. Davis*, 533 U.S. 690 (2001).

30. Mr. Munagi, having been released on an Order of Supervision ("OSUP") pursuant to this process, was therefore deemed by Respondents to lack flight risk or dangerousness.

31. To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690-691 (2001).

32.     ICE determined that Mr. Munagi is neither a flight risk nor a danger when they granted him an OSUP in 2014. Since that date, Petitioner's circumstances have not exacerbated his risk of flight or dangerousness assessment, and he has remained in compliance with the OSUP. In fact, Mr. Munagi now presents a *reduced* risk of flight because of stronger community ties with U.S. citizen children and significant participation in his local church.

33.     Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests within the meaning of the Due Process Clause of the Fifth Amendment. Because Mr. Munagi's detention on October 12, 2025, lacked the procedural protections that such a significant deprivation of liberty requires under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, his continued detention is unlawful. *See Mathews v. Eldridge*, 424 U.S. at 332 (1976); see also *Perry v. Sindermann*, 408 U.S. 593, 601-03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally protected interest). Infringing upon a protected interest triggers a right to a hearing before that right is deprived. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972).

34.     The revocation of Mr. Munagi's release does not satisfy the minimum requirements of due process, because that revocation is not the product of any individualized review and alleges no relevant change in circumstances altering the original assessment of risk and flight. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 388–89 (D. Mass. 2017) (finding a due process violation and explaining that ICE "never asserted that Rombot is a danger to the community or a flight risk, or that he violated the conditions of his [OSUP]. . . . The Supreme Court has recognized that a 'alien may no doubt be returned to custody upon a violation of [supervision] conditions,' but it has never

given ICE a carte blanche to re-incarcerate someone without basic due process protection.") (quoting *Zadvydas*, 533 U.S. at 700).

35.    The government's presumed basis for re-detaining Mr. Munagi is 8 U.S.C. § 1231, the statute governing detention following a final order of removal ("post-order detention"). Under the terms of this statute and the governing regulations, Mr. Munagi's detention is unlawful.

36.    The INA specifies circumstances upon which a person may be released from custody, and it does not provide for re-detention except impliedly for a violation of those terms. The relevant regulatory framework (8 C.F.R. §§ 241.4(l) and 241.13(i)) authorizes revocation of an individual's release on an OSUP only in certain contexts. Section 241.4(l) specifies revocation may occur upon violation of the conditions of release or when, in the district director's opinion, revocation is in the public interest because one of four conditions is met: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Section 241.13(i) provides further conditions where release decisions may be revoked, only for the purpose of removal. Notably, several of these provisions are found only in the regulations and not the statute and are ultra-vires, but even to the extent they apply, Respondents have failed to comply with the process.

37.    8 U.S.C. § 1231 authorizes the detention of individuals following a final order of removal only under specifically delineated circumstances. The third subclause of 8 U.S.C. § 1231(a)(3) provides that an individual who is not removed within a 90-day statutory removal period "*shall* be subject to supervision" (emphasis added) under specific terms, including requirements that he or she appear periodically before an immigration officer and obey any written

restrictions. *See also* 8 C.F.R. § 241.5 (specific conditions for release—involving but not limited to reporting requirements and travel document acquisition requirements—should an order of supervision be issued).

38.     Mr. Munagi has, at a minimum, a regulatory right to a detailed explanation for the reasons of revocation as well as an interview to contest the basis for the revocation. At a minimum, ICE "has the duty to follow its own federal regulations." *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) (quoting Nelson v. I.N.S., 232 F.3d 258, 262 (1st Cir. 2000)). It has failed to do so here.

39.     When the government fails to comply with its own federal regulations, as it did when it revoked Mr. Munagi's release in violation of its own procedures, the action should be found invalid. *See Rombot*, 296 F. Supp. 3d at 388.

40.     Moreover, under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E).

41.     The decision to detain Mr. Munagi, who had previously been released on an OSUP, and neither violated nor failed to comply with OSUP must be reviewed by this Court and found to be "arbitrary, capricious, an abuse of discretion and not in accordance with the law." 5 U.S.C. §§ 706(2)(A), (E). Absent this Court's intervention, Mr. Munagi does not have any "remedy" to challenge the decision of Respondents. *See Torres-Jurado*, 2023 U.S. Dist. LEXIS 193725 at 18 *14 (finding that "[a]lthough procedural requirements can seem like a mere formality, they promote 'agency accountability' and ensure that the parties—and where relevant, the public— can

respond fully and in a timely manner to an agency's exercise of authority.") (citing *Bd. of Regents of State Colleges*, 140 S. Ct. 1891). See also, Occidental Life Ins. Co. of California v. E.E.O.C., 432 U.S. 355, 373 (1977) (stating "[i]t is, of course, possible that despite these procedural protections a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief.") citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424-425 (1975) and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (Court did not foreclose the application of laches to the federal government.).

42.     This Court has previously ordered release to the conditions of prior supervised release for noncitizens arrested at ICE check-ins. *Guzman Valdez v. McDonald*, Case 1:25-cv-12308-MJJ 10 (D. Mass Oct. 3, 2025). Where the government improperly revokes a noncitizen's status of supervised release in violation of law, the proper remedy for that violation is release. *Id*.

<u>CLAIMS FOR RELIEF</u>

**COUNT ONE**
**Violation of Fourth Amendment Reasonable Search and Seizure**

43.     The allegations in the above paragraphs are realleged and incorporated herein.

44.     The Department arrested and detained Petitioner in violation of his right to be free from unreasonable search and seizure. A party claiming a Fourth Amendment violation must establish both that a seizure occurred and that the seizure was unreasonable. *Sodal v. Cook County* 506 U.S. 56, 71 S. Ct. 538, 121 L. Ed. 2d 450 (1992).  A seizure is unreasonable if a balance of public and private interests implicated by the seizure favors the asserted private interest. *Id*. Petitioner asserts a private interest to apply for lawful status in the United States. The Department

has not yet asserted a reason for detaining Petitioner. The balance of Petitioner's asserted private interest outweighs the government interest.

45.     For these reasons, Petitioner's arrest and detention violates the Fourth Amendment.

**COUNT TWO**
**Violation of Fifth Amendment Right to Due Process**

46.     The allegations in the above paragraphs are realleged and incorporated herein.

47.     The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

48.     To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690-691.

49.     Respondents violated their own regulations and did not provide Mr. Munagi with adequate notice and a meaningful opportunity to be heard, thereby also violating due process. *See Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (cleaned up) ("[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner.").

50.     Petitioner is neither a danger nor a flight risk. The detention of Petitioner is arbitrary on its face.

51.     Mr. Munagi has dutifully complied with every condition of his OSUP and no change in circumstances exists to warrant the revocation of his OSUP.

52.     In detaining Petitioner, Respondents took advantage of Petitioner's good faith efforts to comply with law enforcement. The violative actions of the Respondents undermine the faith of noncitizens that they should follow the law and appear to immigration check-ins.

53.     Because Petitioner's detention has been unaccompanied by the procedural protections that such a significant deprivation of liberty requires under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, his continued detention is unlawful.

**COUNT THREE**
**Release on Bail Pending Adjudication**

54.     Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

55.     Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); see also *Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting *Mapp*, 241 F.3d at 230) (cleaned up).

56.     This petition raises constitutional and statutory claims challenging the Petitioner's detention. Upon reason and belief, the Petitioner fears his transfer to a detention facility outside of Massachusetts, where his remote location would prevent him from adequately litigating his removal and bond proceeding by limiting his access to counsel and evidence located within the District of Massachusetts.

**COUNT FOUR**
**Violation of the Administrative Procedure Act**

57.     The allegations in the above paragraphs are realleged and incorporated herein.

58.     The Administrative Procedure Act (APA) provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954). The Accardi doctrine also obligates agencies to comply with procedures it outlines in its internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual).

59.     A court reviewing agency action "must assess … whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

60.     The government arresting at a check-in Petitioner after he had complied with previous check-in requirements outside of detention is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

61.     Revoking a noncitizen's check-in procedure and incarcerating that person without notice or process constitutes an unlawful change in policy that is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

62.     The APA authorizes courts to "set aside" agency action that is "in excess of

statutory jurisdiction, authority, limitations, or statutory right" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A), (C).  It directs courts to "decide all relevant questions of law" and to "interpret constitutional and statutory provisions."  *Id* at § 706. Courts perform this review *de novo* and therefore afford agency interpretation of the statute no deference when determining its meaning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

63.     Here, the governing statute orders the executive to promulgate regulations that require noncitizens on supervised orders of release to do four things. 8 U.S.C § 1231(a)(3). Those requirements include appearing before an immigration officer periodically for identification, submitting, if necessary, to medical and psychiatric examination at the expense of the U.S. government, giving information under oath about the alien's nationality, circumstances, habits, associations, and other information the Attorney General considers appropriate, and obeying reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the noncitizen. 8 U.S.C § 1231(a)(3)(A), (B), (C), (D).

64.     The regulations promulgated pursuant to 8 U.S.C § 1231(a)(3) go beyond the scope of statutory authority. Here, the governing regulations provide for the continued detention beyond the removal period. 8 C.F.R. § 241.4. Detaining a noncitizen, however, is an *ultra vires* action, not enumerated in 8 U.S.C § 1231(a)(3). When circumstances support a sensible inference that a term left out must have meant to be excluded, courts apply the canon of *expressio unius* statutory interpretation. *See NLRB v. SW Gen., Inc.* 580 U.S.  288, 301 (2017) (the inclusion of certain statutory provisions comes at the necessary exclusion of others). The statute considers the restraints the executive may place on a noncitizen *after releasing* that person from detention. *See* 8 U.S.C § 1231(a)(3). The relevant section of statute does not contemplate re-detention at all. *Id*. It is sensible to infer that in the context of restrictions affecting a person released from detention,

including certain restrictions that fall short of detention excludes detention as an authorization of statute.

65.     Because the regulations governing detention after the government releases a noncitizen on supervised release come in excess of statutory jurisdiction, authority, or limitations, this court should set those regulations aside. Without those regulations, the Respondents have no authority to detain Petitioner.

**COUNT FIVE**
**Violation of Federal Statute – 8 U.S.C. § 1231**

66.     Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

67.     A noncitizen's continued detention beyond the removal period is distinguishable from re-detention following their release from ICE custody.

68.     Because DHS released Petitioner on supervised release in 2014, upon his arrest in October, 2025, ICE did not continue his detention but rather initiated a new detention (*i.e.*, re-detained the Petitioner).

69.     ICE was not authorized to re-detain Petitioner pursuant to 8 U.S.C. § 1231(a)(6).

70.     Section 1231(a)(6) provides that:

> An alien ordered removed who is inadmissible under *section 1182* of this title, removable under *section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)* of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may* be detained *beyond* the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)].

8 U.S.C. § 1231(a)(6) (emphasis added).

71.     Section 241.4 of Title 8 of the Code of Federal Regulations provides that:

> (a) Scope. The authority *to continue an alien in custody* or grant release or parole under sections 241(a)(6) and 212(d)(5)(A) of the Act shall be exercised by the Commissioner or Deputy Commissioner, as follows: Except as otherwise directed

by the Commissioner or his or her designee, the Executive Associate Commissioner for Field Operations (Executive Associate Commissioner), the Deputy Executive Associate Commissioner for Detention and Removal, the Director of the Detention and Removal Field Office or the district director may *continue an alien in custody beyond the removal period* described in section 241(a)(1) of the Act pursuant to the procedures described in this section. Except as provided for in paragraph (b)(2) of this section, the provisions of this section apply to the custody determinations for the following group of aliens:

(1) An alien ordered removed who is *inadmissible under section 212* of the Act, including an excludable alien convicted of one or more aggravated felony offenses and subject to the provisions of section 501(b) of the Immigration Act of 1990, Public Law 101–649, 104 Stat. 4978, 5048 (codified at 8 U.S.C. 1226(e)(1) through (e)(3)(1994));

(2) An alien ordered removed who is removable under *section 237(a)(1)(C)* of the Act;

(3) An alien ordered removed who is removable under *sections 237(a)(2)* or *237(a)(4)* of the Act, including deportable criminal aliens whose cases are governed by former section 242 of the Act prior to amendment by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Public Law 104–208, 110 Stat. 3009–546; and

(4) An alien ordered removed who the decision-maker determines is *unlikely to comply with the removal order or is a risk to the community*.

8 C.F.R. 241.4 (emphasis added).

72.     Section 1231(a)(6) and its concomitant regulation, 8 C.F.R. § 241.4, only authorize the *continuation* of the detention of noncitizen beyond the removal period where the noncitizen had been in custody at the time of the entry of his removal order or was detained during the removal period pursuant to 8 U.S.C. § 1231(a)(2) and 8 C.F.R. § 241.3.

73.     Section 1231(a)(6) and 8 C.F.R. § 241.4 do not authorize the re-detention of a noncitizen, like Petitioner, who was previously released from custody unless the government shows by clear and convincing evidence that the noncitizen has become a danger to the community or flight risk. *See Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2411010, at *8 (E.D. Cal. Aug. 20, 2025) (holding that the government "[could] not *re-detain* petitioner unless [it] proves by clear and convincing evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the community" where the noncitizen, despite having a

reinstated removal order, was previously released from custody (emphasis added)); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's *re-detention* without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." (emphasis added)).

74. Section 1231(a)(6) and 8 C.F.R. § 241.4 do not authorize the re-detention of a noncitizen, like Petitioner, who was previously released from custody unless the government shows by clear and convincing evidence that the noncitizen has become a danger to the community or flight risk. *See Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2411010, at *8 (E.D. Cal. Aug. 20, 2025) (holding that the government "[could] not *re-detain* petitioner unless [it] proves by clear and convincing evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the community" where the noncitizen, despite having a reinstated removal order, was previously released from custody (emphasis added)); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's *re-detention* without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." (emphasis added)).

**COUNT SIX**
**Violation of Federal Regulations – 8 C.F.R. § 241.4**

75. On information and belief, Respondents arrested and currently detain Petitioner without cause, violating his constitutional rights to due process of law, and violating the Federal Regulations controlling revocation of Supervised Orders of Release.

76. Petitioner followed all the requirements of his release notification and Order of Supervision. Yet, petitioners took him into custody and detained him on October, 14, 2025, despite his reporting to ICE in accordance with the release requirements and ICE holding him in the past

with no deportation following.

77.    Petitioner did not receive a Notice of Revocation of Release and Respondents therefore did not address the necessary revocation elements under 8 C.F.R. § 241.4, thereby making the means of revocation insufficient under the regulations, warranting his release.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1)    Assume jurisdiction over this matter;

(2)    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3)    Declare that Petitioner's detention and arrest violates the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and 8 U.S.C. § 1231;

(4)    Issue a Writ of Habeas Corpus ordering Respondents to immediately release petitioner, and, in the interim preventing his transfer outside of the District.

(5)    Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(6)    Grant any further relief this Court deems just and proper.

Respectfully submitted,

Francis Munagi

By and through his counsel,

Dated: 10/27/2025

/s/ *Todd C. Pomerleau*
Todd C. Pomerleau
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077

Fax: (617) 367-0071
rubinpom@rubinpom.com
MA BBO#664974